TADEUSZ KARPINSKI, Individually and as Administrator of the Estate of ELVIRA KARPINSKI, Deceased, Respondent, *v.* STATE OF NEW YORK, Appellant. (Claim No. 47784.)

Third Department, July 20, 1970.

*Louis J. Lefkowitz, Attorney-General (Ruth Kessler Toch* and *Peter J. Dooley, Jr.,* of counsel), for appellant.

*Furey, Mooney & Hengeveld (James M. Furey* of counsel), for respondent.

HERLIHY, P. J. This is an appeal by the State from a judgment of the Court of Claims awarding the respondent administrator the sum of $10,000 for the pain and suffering of his decedent wife; the sum of $20,000 for wrongful death; and the sum of $1,881 for funeral expenses.

The decedent had been a known diabetic since age 21 and was about 36 years of age when she died in 1965. The decedent had apparently been able to control her condition on a self management program of insulin and diet with monthly medical checkups. She had been employed prior to her marriage in 1953 and after her marriage the diabetic condition in no way disabled her from performing all of the chores and work of a housewife. In March of 1964 she was hospitalized for a short time and treated for mental illness and following her discharge from the hospital she resumed her normal functions. In February of 1965 she was hallucinating and was admitted to Jacobi Hospital with a diagnosis of chronic paranoid schizophrenia. After four days at Jacobi Hospital she was transferred on February 19, 1965 to Bronx State Hospital for treatment of her mental condition. The Bronx State Hospital staff knew that the decedent was a diabetic and upon admission the doctor ordered a special

low carbohydrate diet; regular insulin doses; urine tests for sugar four times daily; a blood sugar test; and various other tests. The admitting doctor testified that it was intended that the blood sugar test be done on February 23, 1965.

The claimant contended that the hospital staff so negligently mismanaged the decedent's diabetic condition that she was thereby caused to suffer insulin shock and that the staff did not take appropriate steps to reverse the shock with the result that death occurred on March 12, 1965. The cause of death was listed as lobar pneumonia due to diabetes mellitus.

The initial issue for the trial court and raised on this appeal is the question of negligence in causation of the insulin shock and this issue was resolved on the facts in favor of claimant by the trial court.

With reference to the disease of diabetes, the claimant's medical expert stated: " A diabetic is incapable of metabolizing carbohydrates in terms of those — of their insulin production by their pancreas. So, we give measured quantities of insulin to diabetics to metabolize the food they're taking, specifically carbohydrates."

The record establishes that when a patient is receiving insulin he is quite apt to go into shock if the amount of blood sugar drops below a certain level. Aside from clinical signs which indicate that the patient is going into shock, the only way to ascertain the amount of sugar in the blood is by a blood test. Since the amount of insulin necessary to control the diabetic condition is dependent upon the amount of blood sugar, it is obvious that such tests are necessary from time to time to regulate the insulin dosage. The record also establishes that the minimum amount of insulin required can be checked by routine urine tests which will indicate that there is too little insulin in the body. The diabetic condition was apparently satisfactory on the first two days at Bronx State, but on February 21 she required extra insulin which was administered to her. On the morning of February 22 the decedent received her regular dosage of insulin, but refused to eat her breakfast.

The attendant on duty in the decedent's ward testified that when she came on duty at 8:00 A.M. on February 22 she was told that the decedent had refused to eat breakfast and that in accordance with her training she " gave her some orange juice. And now she did take fluids." The record establishes that when a diabetic ingests less food and/or carbohydrates than his ordinary diet provides, he is apt to have a deficiency of blood sugar which means an overabundance of insulin and a probability of shock. It is further established that proper care when a patient

refuses to eat is to feed the patient orange juice with sugar in it and milk and if the patient will not take such foods, then to force feed glucose intravenously. The record does not disclose how much fluids the decedent consumed on the morning of February 22, or if the fluids had sugar added to them.

The admitting physician testified that the attendants had been instructed to feed diabetic patients orange juice with sugar and milk every hour when the patients refused to eat. She further testified that had she been present when the decedent refused her breakfast she would have been concerned about the possibility of too little sugar in her blood. She stated that a blood test was not required just because the patient did not eat, but that if physical signs or symptoms of an overdose of insulin appear, then a test should be made. The record establishes that no doctor examined the patient for such symptoms on the morning of the 22nd and that in fact, no doctor attended the decedent until after the patient refused her lunch and was fully suffering insulin shock. The ward attendant testified that the decedent "was unable to talk" and "wasn't able to talk too well, but she was talking" at 8:00 A.M. on the 22nd. The record indicates that the decedent's mental disorder did not in any way affect her ability to speak.

From the foregoing, it is apparent that the record contains evidence that the hospital personnel knew that the decedent's failure to eat breakfast could precipitate shock and the decedent was exhibiting an unusual symptom as to her speech which would not ordinarily be connected with her mental disorder as early as 8:00 A.M. on February 22 and that the personnel did not even cause the decedent to be examined by a doctor. The decedent was fed fluids which is a recognized treatment, but there is no evidence that she was given sugar with the fluids and the record establishes that sugar is necessary. There is evidence that the decedent was revived from the insulin shock on February 22 about 10 minutes after glucose was administered to her, but at that time no blood tests were undertaken to attempt to establish her blood sugar level and the earliest such test was apparently performed on February 23 when the decedent was found to be comatose. Furthermore, the claimant produced expert testimony that upon going into shock the decedent should have been monitored for blood sugar and tested for "electrolyte balance" as good medical procedure. It appears from the record that the decedent was not tested for "electrolyte balance" and the State's expert did not dispute the necessity for such a test.

The medical evidence is that ordinarily the shock would be reversible, but that the decedent was comatose from February 23 until her death on March 12, 1965 with the possible exception of the last two days of her life. The failure of the appellant to monitor the decedent's blood sugar level commencing on February 22 and to undertake testing for "electrolyte balance" supports the finding of negligence which resulted in the decedent's continuance in shock on and after the initial shock of February 22. It should be noted that the record contains evidence that the hospital staff made sincere efforts to combat the insulin shock.

The Bronx State Hospital record listed as a cause of death lobar pneumonia due to diabetes mellitus. The appellant contends that there was inadequate proof that the shock was a proximate cause of death, but in view of its own medical records this contention appears to be without merit.

The alleged misstatements of fact by the trial court referred to in the appellant's brief would not appear to require a reversal of the judgment and award as they do not necessarily affect the conclusion of negligence.

The record establishes that the decedent's mental condition although diagnosed as chronic would not necessarily preclude her from resuming her duties as a housewife in the future and the appellant's contention that the claimant's expert considered the mental disorder temporary is without justification. It was the expert's opinion that the condition would have "acute" episodes requiring hospitalization, but that other than during such episodes she could perform her duties as a housewife and it was reasonable to expect her to recover from the present hospitalization. The chores and duties of a housewife certainly have great value and the award of $20,000 does not appear excessive for the wrongful death of a 36-year-old woman.

The Court of Claims without setting forth any facts allowed $10,000 for pain and suffering prior to decedent's death. The record is devoid of any evidence to sustain an award for such cause of action.

The judgment should be modified, on the law, so as to reduce the amount of the award to $21,881, with appropriate interest, and, as so modified, affirmed, without costs.

REYNOLDS, J. (dissenting). I cannot concur in upholding the trial court's finding of liability on the part of the State on the facts present in the instant record.

The record reveals that when Elvira Karpinski was admitted to the Bronx State Hospital on February 19, 1965 for treatment

of her mental illness her diabetic condition was controlled and had been so for 14 years. In fact, if her condition had not been controlled, she would not have been accepted at Bronx State Hospital. On Friday the 19th and Saturday the 20th there was no noted difficulty in decedent's condition, but on Sunday the 21st after her urine analysis revealed a plus sugar level, extra insulin was routinely administered. On Monday the 22nd the decedent, after receiving her morning dosage of NPH insulin, refused to make urine or eat breakfast whereupon she was given orange juice and fluids. At lunch time on the 22nd she refused to eat and sometime after noon went into insulin shock. At 12:40 P.M. 20cc. of 50% glucose was administered intravenously by a physician and she apparently progressed normally and routinely for the remainder of the 22nd. On Tuesday morning the 23rd of February, however, she could not be awakened. All efforts were made to revive her but she never fully regained consciousness and died March 12, 1965.

The alleged negligence on the part of the State is that the Bronx State Hospital should have performed a fasting blood sugar test on the decedent before February 23, 1965 and/or administered intravenous "food" or stopped the dosage of insulin on the 22nd. There is no indication that the efforts to combat the insulin shock subsequent to its onset were in anyway unacceptable. And, in fact, claimant's medical expert testified that what was done was reasonably good medical practice. With respect to the alleged failure to eat breakfast, as the majority points out the established proper care is "to feed the patient orange juice with sugar in it and if the patient will not take such foods, then to force feed glucose intravenously." Here when the decedent refused breakfast the record clearly reveals she was given orange juice and fluids. I am not willing to assume, as the majority apparently is, that the failure of the records to indicate how much fluids she consumed or if sugar was added to them established that inadequate fluids were administered or that the prescribed sugar was not added especially when the testimony in the record is that these were routine acts and not charted. And unquestionably when she refused to eat lunch glucose was administered intravenously. As to the failure to perform the fasting blood sugar test so heavily stressed by the majority and the court below, I see no basis for predicating liability on the State on this ground. When the decedent was admitted she was not an acute patient and the Bronx State Hospital was not a facility for handling acute medical patients. On admission on the 19th a fasting blood sugar test was ordered by the admitting physician but since the decedent had not been

fasting the test could, of course, not be performed immediately nor was there any indication with a holiday weekend approaching that considering decedent's controlled condition the test was of necessity to be performed before the 23rd. Moreover, since the decedent's urine sugar test showed a plus even on February 21, a fasting blood sugar test performed on the 19th, 20th or 21st would not apparently have indicated a low blood sugar level. Nor considering the nature of the decedent's condition and the fact that the Bronx State Hospital is not an acute hospital can I ascribe liability to the State for the failure of the hospital staff to call a physician prior to noon on the 23rd.

Accordingly, I fail to find any basis whatever to assess liability to the State for the decedent's unfortunate demise, and I, therefore, vote to reverse and dismiss the claim.

GREENBLOTT and COOKE, JJ., concur with HERLIHY, P. J.; REYNOLDS, J., dissents and votes to dismiss the claim in opinion in which SWEENEY, J., concurs.

Judgment modified, on the law, so as to reduce the amount of the award to $21,881, with appropriate interest, and, as so modified, affirmed, without costs.